# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELIQUE MILLER O/B/O J. MILLER, | CASE NO. 3:13-CV-02458-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| Defendant. | Docs. 1, 6, 7, 12, 14 |

## REPORT AND RECOMMENDATION

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Angelique Miller o/b/o J. Miller's ("Plaintiff") application supplemental security income benefits ("SSI"). Plaintiff alleged that she was entitled to child benefits as a result of precocious (early) puberty, attention deficit hyperactivity disorder ("ADHD"), and oppositional defiant disorder ("ODD") with an alleged onset date of January 29, 2007 (her seventh birthday). The administrative law judge ("ALJ") found that Plaintiff's impairments did not meet, medically equal, or functionally equal a listed impairment in 20 C.F.R. pt. 404, subpart P, app. 1. ("Listing"), and denied Plaintiff's claim. Plaintiff challenges only the ALJ's determinations that she had less than marked impairments in interacting and relating with others and attending and completing tasks, asserting that if the ALJ did not err in these determinations, she would have functionally equaled a Listing and entitled to benefits.

With regard to interacting and relating with others, the Court finds that Plaintiff struggled

Page **1** of **27**

to make friends her age, occasionally yelled at her peers, and was verbally aggressive with her mother. However, she got along with all other adults, including teachers, her grandparents, and her friends' parents, she had friends, albeit younger ones, she was able to play team sports and participate in band, her fourth grade teacher reported that she had no serious or very serious problems in the domain of interacting and relating with others (and obvious problems with only two of the thirteen activities in the domain of interacting and relating with others), her fifth grade teacher noted obvious or serious problems with only three of thirteen activities in the domain of interacting and relating with others, Plaintiff's medical records and mother's testimony show that her anger problems and arguments had improved, and Plaintiff's medical records show repeated assessments by treating physicians that she had only moderate difficulties in functioning. Plaintiff produced no medical opinion evidence, and medical opinions from a consultative examiner and state agency physician concluded that Plaintiff had less than marked limitations in interacting and relating with others. Substantial evidence supports the ALJ's finding that Plaintiff did not suffer a marked limitation in interacting and relating with others.

With regard to attending and completing tasks, the Court finds that the ALJ may have erred in finding that Plaintiff did not suffer a marked limitation. However, Plaintiff would need to have demonstrated an extreme limitation in attending and completing tasks to qualify for benefits because the ALJ properly determined that she did not suffer a marked or extreme limitation in any other domain. The Court finds that substantial evidence supports the ALJ's determination that Plaintiff did not suffer an extreme limitation because Plaintiff performed at or near grade-level in regular, mainstream classes without an individualized education plan ("IEP"), scored in the "proficient" range in state testing, was able to play in the band and softball, report

cards from second, fourth, and fifth grades showed that Plaintiff was meeting or progressing toward expectations in completing homework assignments on time, following directions, following school rules, practicing self-control, and respecting herself, others and things. Again, Plaintiff's medical records show repeated assessments by treating physicians that she had only moderate difficulties in functioning. Plaintiff produced no medical opinion evidence, and medical opinions from a consultative examiner and state agency physician supported the ALJ's determination. Substantial evidence supports the ALJ's determination that Plaintiff did not suffer an extreme limitation in attending and completing tasks. Consequently, the Court need not determine whether substantial evidence supports the ALJ's determination that Plaintiff did not suffer a marked limitation in attending and completing tasks. Based on the forgoing, the Court recommends that Plaintiff's appeal be denied and this case closed.

## II.     Procedural Background

On February 17, 2010, Plaintiff, Angelique Miller, on behalf of J. Miller, a minor child ("Plaintiff") filed an application for SSI under Title XVI of the Social Security Act. (Tr. 116-119). On August 19, 2010, the Bureau of Disability Determination[1] denied this application (Tr. 43), and Plaintiff filed a request for a hearing on October 4, 2010.  (Tr. 75-77). On December 1, 2011 an ALJ held a hearing at which Plaintiff, who was represented by an attorney, and her mother appeared and testified.  (Tr. 16-42).  On January 25, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 44-62). On March 9, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 14-15), which the Appeals Council denied on August 5, 2013, thereby affirming the decision of the ALJ as the "final decision" of the

---

[1] The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

Commissioner.  (Tr.1-6).

On September 25, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 2, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 6, 7). On February 13, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief") (Doc. 12). On March 19, 2014, Defendant filed a brief in response ("Def. Brief") (Doc. 14). On May 5, 2014, the Court referred this case to the undersigned Magistrate Judge.

### III.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 564 (1988). Substantial evidence requires only "more than a mere scintilla" of evidence, Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), and may be less than a preponderance. Jones, 364 F.3d at 503. If a "reasonable mind might accept the relevant evidence as adequate" to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Johnson, 529 F.3d at 200.

### IV.     Sequential Evaluation Process

For a child under age 18 to be entitled to SSI benefits, he must have "a medically

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(c)(I). The Acting Commissioner's rules for evaluating childhood disability follow a three-step sequential evaluation process, under which the Acting Commissioner will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924.

A child functionally equals a listing when his impairment is of listing level severity, i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning used in determining functional equivalence are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A marked limitation in a domain is found when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2).

### V. Relevant Facts in the Record

### A. Medical and School Records

Plaintiff was born on January 29, 2000. (Tr. 116).  Her alleged onset date is January 29, 2007, which was her seventh birthday in the middle of her first grade year. (Tr. 116). Plaintiff has never engaged in substantial gainful activity. (Tr. 154).

Plaintiff's school records show that she mastered all of the subjects taught in kindergarten. (Tr. 198-200). In first grade, Plaintiff's report card shows that she was "consistently meeting grade level expectations" in completing class work and homework on time, demonstrating a positive attitude, organizational skills, following directions and school rules, listening attentively, and working independently. (Tr. 197).

Comments from Plaintiff's 2nd grade report card from 2007-2008 indicate that she needs to "work on her full potential" and continues to "not get work completed in class." (Tr. 194). Her ability to complete school work on time was an "area of weakness," but she was "consistently meeting grade level expectations" in completing homework on time, following school rules, interacting appropriately with peers, practicing self-control, and respecting herself, others and things. (Tr. 195).

At a check-up for her precocious puberty on March 23, 2009, Plaintiff reported that her grades were good but that she did not "get the work done. She doesn't want to do it but knows it." (Tr. 228).

At the end of third grade, 2008-2009, Plaintiff received a score of "proficient" in all skills assessed by state testing. (Tr. 169). Plaintiff's third-grade report card showed that she was performing at grade level, but had "areas of weakness" in completing school work on time, having a positive attitude, listening attentively, practicing self-control, putting forth effort, and working independently. (Tr. 193).

At a physical for summer camp on June 3, 2009, Plaintiff denied problems. (Tr. 222). At a follow-up for precocious puberty on September 1, 2009, Plaintiff was reported to have good

grades, but her behavior in school was "less wonderful." (Tr. 243). On November 11, 2009,

Plaintiff followed-up again, and had no acute complaints. (Tr. 252).

In an assessment from the second quarter of fourth grade, Plaintiff's teacher, Tricia

Hughes, noted that Plaintiff only "sometimes" struggled to stay focused in order to complete her

assignments, "is a very bright young lady," and when focused "gives [Ms. Hughes] very good

work." (Tr. 210).

On March 8, 2010, Plaintiff reported to Northern Tier Counseling ("NTC") for an intake

evaluation for Family Based Mental Health services. (Tr. 395). Her presenting problems were

anger and trouble focusing at school. (Tr. 395). She was not aggressive at school, but fought with

her mother daily. (Tr. 395). She was snappy, mouthy, and defiant about everyday things. (Tr.

395). Her attention was fair but her motor activity was hyperactive. (Tr. 395). She cried when her

mother became upset. (Tr. 395). Notes indicate that she "seem[ed] slightly immature for her age"

and that she had poor impulse control, but that she was intelligent. (Tr. 396). She reported no

head injuries, black outs, or headaches. (Tr. 400). She presented as "very demanding of her

mother," who tries overly hard to please Plaintiff, and Plaintiff stated that she does not know

why she becomes angry. (Tr. 400). She was diagnosed with ODD and assessed a global

assessment of functioning ("GAF") score of 55. (Tr. 401). Her impression on Axis IV[2] was

---

[2] Axis IV used in diagnosing mental impairments "for reporting psychosocial and environmental problems that may affect the diagnosis, treatment and prognosis of mental disorders. A psychosocial or environmental problem may be a negative life event, an environmental difficulty or deficiency, a familial or other interpersonal stress, an inadequacy of social support or personal resources, or other problem relating to the context in which a person's difficulties have developed." Sullivan v. Colvin, 3:11-CV-02369, 2013 WL 5408647 at *9 (M.D. Pa. Sept. 25, 2013) (Nealon, J.) (quoting Diagnostic and Statistical Manual of Mental Disorder, 31 (4th Ed. Text Revision 2000)).

"parent+child relations." (Tr. 401). Her attitude toward authority was good, she had friends, and her attitude toward peers was listed as "some like, some don't like." (Tr. 402). Her interests included art, recess, science, and reading. (Tr. 402).

On March 19, 2010, Plaintiff was seen for a follow-up of precocious puberty. (Tr. 441). Treatment notes indicate that Plaintiff was in the "top rating for reading" at school, does not like math, and "may have touch of ADD. B-C range. Likes school." (Tr. 442).

Her fourth grade report card from the end of 2009-2010 shows that Plaintiff was "consistently meeting grade level expectations" in completing homework assignments on time, following directions, following school rules, contributing in large and small group discussions, practicing self-control, and respecting herself, others and things. (Tr. 170, 191-92). It shows that Plaintiff was "making progress toward grade level expectations" in completing class work on time, demonstrating organizational skills, interacting appropriately with peers, listening attentively, putting forth effort, and working well independently. (Tr. 170, 191-92). She had no "areas of weakness." (Tr. 170, 191-92). The records also show that Plaintiff received a grade of "3" out of a possible 4 in each subject except math and art, which "[i]ndicates a solid understanding and adequate display of the skills." (Tr. 170-71, 191-92).

Plaintiff's treatment plan notes from NTC indicate that on June 15, 2010, her grandmother reported that she was making progress, but still had an attitude sometimes and was not spending time with her mother. (Tr. 423). On July 14, 2010, Plaintiff's Family Based Mental Health case was closed early "due to no concerning problems being seen." (Tr. 429). On August 11, 2010, treatment notes indicate that she was "doing well [with] following directions" and that her arguing had decreased, although she still needed to work on coping skills. (Tr. 431-32, 435).

On October 13, 2010, Plaintiff was transferred to outpatient therapy with Ruth Bresee, LSW (Tr. 405). A gastroenterology consult note from September 15, 2010, noted that Plaintiff "currently earns As and Bs in the 5th grade." (Tr. 336). Plaintiff displayed a "bright affect." (Tr. 337).

On February 13, 2011, Plaintiff's treatment plan at NTC was updated. (Tr. 490). Notes indicated that Plaintiff had "no major issues," had last attended on December 13, 2010, and was to be "discharged pending discussion with mother." (Tr. 490). Her prognosis was "good," and her discharge plan indicated that services were "no longer needed." (Tr. 491).  She had attended "off and on" from October 6, 2010 to December 13, 2010. (Tr. 491). She was assessed a GAF score of 55, and her mother indicated that she no longer needed to attend because she was "doing very well." (Tr. 491).

Plaintiff's 5th grade report card from the end of 2010-2011 included comments that she is a "pleasure to have in class" and that she is "such a thoughtful, helpful student." (Tr. 188). Plaintiff was "consistently meeting grade level expectations" in completing class work on time, completing homework assignments on time, following directions, following school rules, interacting appropriately with peers, contributing in large and small group discussions, listening attentively,  practicing self-control, respecting herself, others and things, demonstrating organizational skills, putting forth effort, and working well independently. (Tr. 189). She was reading on-grade level. (Tr. 189).

On November 15, 2011, Plaintiff presented to NTC for an evaluation. (Tr. 492). Notes indicate that her mother reported she lacked focus, has difficulty with her peers (bullying), difficulty at school, and "back talks" her mother. (Tr. 492).  She reported symptoms that included losing items, difficulty following instruction, easily distracted, and aggressiveness

toward her mother. (Tr. 492). She was noted to be easily distracted with tangential thought processes and impaired judgment/insight, but her motor activity was calm. (Tr. 492). The clinician's notes indicated that she "was quiet during intake and deferred to her mother often when directly questioned." (Tr. 493). She reported that she had "black outs" two to three times in the past and that her headaches impacted her functioning five to seven days per week. (Tr. 494). She had no concerns with regard to her attitude toward teachers. (Tr. 497). She reported playing softball. (Tr. 495). Dr. George Sowerby, Jr. M.D. suggested that Plaintiff and her mother consider Behavioral Health Rehabilitation Services, but "[h]er mother seemed disinterested in completing a referral." (Tr. 499). She was assigned a GAF score of 55 with diagnoses of ADHD and disruptive behavior not otherwise specified. (Tr. 499). Dr. Sowerby assessed her to have only a "moderate" difficulty with peers and inadequate social support on Axis IV. (Tr. 499).

For sixth grade school records, Plaintiff produced a printout from a website titled "Powerteacher." (Tr. 209). It appears to show Plaintiff's first quarter grades, but it is unclear whether these first quarter grades are final grades or interim grades. (Tr. 209).

Plaintiff submitted official grade sheets from sixth grade to the Appeals Council, but they were not before the ALJ. (Tr. 60-62, 211-213). When the Appeals Council denies review, the only way for the Court to consider records that were not before the ALJ is in the context of a remand pursuant to sentence six of 405(g), 42 U.S.C.  ("sentence six remand"). A sentence six remand requires, *inter alia*, that the evidence be new (not cumulative) and material (raises a reasonable possibility that the ALJ would have decided differently if he had considered the evidence). Id.; Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).  Here, Plaintiff has not requested a sentence six remand. Even if she had, the Court would

note that, aside from math, Plaintiff's average grades from the first two quarters of sixth grade were all in the passing range, with a "major subject" average of 79.29, which is in the C-range, and her only two "final" grades were a 91 and 94. (Tr. 212). Thus, they were cumulative to her earlier report cards, which show that she generally has average performance except for struggles in math. (Tr. 170, 188, 191-96, 197, 198-200). These records are also not material, because they show that she was still generally performing at grade level in mainstream classes without special education or an IEP, which supports the ALJ's conclusion that she did not suffer from a marked limitation in interacting and relating with others and did not suffer an extreme limitation in attending and completing tasks. Consequently, the Court will not remand pursuant to sentence six or consider these records.

Plaintiff's medical records show that she was also treated during her elementary school years for gastroenterology problems (Tr. 334-339, 362-65,   444-46, 451) and headaches (Tr. 460, 477-78). Plaintiff has not challenged the ALJ's determinations that her headaches were nonsevere and that she had no limitation in health and physical well-being as a result of her impairments. Plaintiff also has not alleged that these problems impacted her ability to interact and relate to others or attend and complete tasks.

### B. Function Reports, Teacher Reports, Opinion Evidence, and Testimony

On February 11, 2010, Plaintiff's mother completed a Function Report-Child. (Tr. 137). She reported that Plaintiff wears glasses, but has no problem hearing and her ability to communicate is not limited (Tr. 138-40). She reported that Plaintiff struggles with math but is not otherwise limited in her ability to progress in learning. (Tr. 141). She indicated that Plaintiff generally gets along with school teachers and plays team sports, but that she does not have

friends her own age and cannot make new friends. (Tr. 143). She reported that Plaintiff does not

pick up and put away her toys, hang up her clothes, help around the house, do what she is told

most of the time, and does not accept criticism or correction. (Tr. 144). She indicated that

Plaintiff's ability to pay attention and stick with a task was limited because she does not keep

busy on her own, does not finish things she starts, and does not complete chores most of the

time, although she does complete her homework. (Tr. 145).

On March 29, 2010, Trisha Hughes, Plaintiff's fourth grade teacher, filled out a Teacher

Questionnaire. (Tr. 157-164). She noted that Plaintiff was performing at grade level in all

subjects (Tr. 157). The Questionnaire uses a five-point scale: 1-no problem, 2-slight problem, 3-

obvious problem, 4-serious problem, and 5-very serious problem. (Tr. 159). In the domain of

attending and completing tasks, Ms. Hughes opined that Plaintiff had no problem with paying

attention when spoken to directly, sustaining attention during play/sports activities, and carrying

out single-step instructions. (Tr. 159). She opined that Plaintiff had only a slight problem with

refocusing to task when necessary, carrying out multi-step instructions, waiting to take turns,

changing from one activity to another without being disruptive, and completing work accurately

without careless mistakes. (Tr. 159). She opined that Plaintiff had an obvious problem focusing

long enough to finish assigned activity or task, organization her own things or school materials,

and working without distracting self or others. (Tr. 159). She opined that Plaintiff had a serious

problem working at a reasonable pace or finishing on time. (Tr. 159). She explained that

"[Plaintiff] has a very hard time completing classwork on time. She is usually talking or finding

other things to do when she should be working. Quite often [Plaintiff] needs someone close to

her to stay on task." (Tr. 159).

In interacting and relating with others, Ms. Hughes noted no serious problems. She opined that Plaintiff had an obvious problem with playing cooperatively with other children and making and keeping friends, but that she had only a slight problem expressing anger appropriately and following rules, and no problems with seeking attention appropriately, asking permission appropriately, respecting and obeying adults, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting meaning of facial expression, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (Tr. 160). Although Ms. Hughes noted that Plaintiff "sometimes needs guidance and reminders on how to act appropriately with peers without shouting," (Tr. 160), she also noted that Plaintiff "is usually a very happy child. She is very respectful with me and other adults at school." (Tr. 164).

On July 29, 2010, Sue Labar Yohey, M.ED. provided a telerecorded message to the Bureau of Disability Determination providing her opinion after a psychological evaluation with Plaintiff. (Tr. 274). She observed that Plaintiff was "very bouncy and inattentive" during the history, and "[a]ctivity level was somewhat higher and attention was somewhat lower." (Tr. 277). Plaintiff was assessed to have average intelligence, and, while she was "somewhat chatty and silly," she came up with "excellent strategies" on some of the tests. (Tr. 278). She "showed a good attitude" and "appeared to enjoy the challenge and felt herself capable of coming up to the challenge." (Tr. 278). She concluded that "when something catches her fancy, she is very persistent and is able to, in some cases, function at a superior level." (Tr. 279). She opined that

Plaintiff was "ok" in all of the domains except interacting and relating with others, where she was "ok [with] adults." (Tr. 281-85).

In August of 2010, Dr. Louis Tedesca, M.D. and Dr. Dennis Gold, Ph.D. completed a Childhood Disability Evaluation Form. (Tr. 214-219). They opined that Plaintiff's conditions were severe, but did not meet, medically equal, or functionally equal a listing. (Tr. 214). They opined that she had a less than marked limitation in attending and completing tasks because, although she has problems with focus, she is able to complete most of her work. (Tr. 216). They opined she had a less than marked limitation in interacting and relating with others. (Tr. 216). They also noted that she requires no IEP, gets good grades, is considered an advanced reader, and that her "functioning is generally age appropriate at this time." (Tr. 219).

On August 11, 2011, Julie Marhefka, Plaintiff's fifth grade teacher, filled out a Teacher Questionnaire. (Tr. 201-08). She opined that she was on-grade level in reading and math, but below grade-level in written language. (Tr. 201). In the domain of attending and completing tasks, Ms. Marhefka opined that Plaintiff had a very serious problem refocusing to task when necessary, working without distracting self or others, and working at a reasonable pace/finishing on time. (Tr. 203). She opined that Plaintiff had serious problems focusing long enough to finish assigned activities or tasks and organizing her own things or school materials. (Tr. 203). She opined that Plaintiff had an obvious problem carrying out multi-step instructions. (Tr. 203). She opined that Plaintiff had only a slight problem with paying attention when spoken to directly, sustaining attention during play/sports activities, waiting to take turns, completing class/homework assignments, and completing work accurately without careless mistakes. (Tr. 203). She opined that she had no problem carrying out single-step instructions or changing from

one activity to another without being disruptive. She explained that "Attention span and ability to focus to areas of weakness for [Plaintiff]. She needs constant redirection and sometimes repeated directions [because] she 'missed' them. Having appropriate materials ready to begin lessons and having the required materials to take home are a constant struggle [with] repeated checklists." (Tr. 203).

In the domain of interacting and relating to others, Ms. Marhefka opined that Plaintiff had a serious problem in playing cooperatively with other children and making and keeping friends and an obvious problem expressing anger appropriately. (Tr. 204). However, she opined that Plaintiff had only a slight problem respecting and obeying adults in authority and interpreting the meaning of facial expression, body language, hints and sarcasm. (Tr. 204). She opined that Plaintiff had no problems seeking attention appropriately, asking permission appropriately, following rules, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (Tr. 204). She indicated that it had not been necessary to implement behavior modifications for Plaintiff. (Tr. 204). She explained that:

> [Plaintiff] has social and emotional issues especially with peers. She is an outcast, frequently playing with younger students or alone. Tends to be bullied due to peer frustration with her quirks (i.e. nose-picking, crying, tattling…etc). [Plaintiff] struggles with perceiving situations appropriately. She <u>always</u> feels others are <u>always</u> out to get her-even those who are not being mean to her. She has a difficult time playing with others-taking turns, agreeing on how to play. Her mood is regularly "grouchy" and she tends to snap at anyone who speaks to her…especially peers

(Tr. 204-06) (emphasis in original). For the domains of acquiring and using information, moving about and manipulating objects, and caring for herself, Ms. Marhefka checked a box indicating

that there were "[n]o problems observed in this domain." (Tr. 202, 205, 207). When asked to identify any physical conditions that impacted Plaintiff's functioning at school, she left the response area blank.

At the hearing before the ALJ, Plaintiff's mother testified that Plaintiff was in the sixth grade attending regular classes. (Tr. 22). She explained that Plaintiff did well on tests and completes her homework, but that she does not turn the homework in at school. (Tr. 22-23). Her mother testified that she was failing two subjects because she was not getting her work in on time. (Tr. 24). She testified that Plaintiff struggled to remember things that she had just read and that she could not work at a reasonable pace because she was easily distracted. (Tr. 37).

She explained that Plaintiff is very loud and verbal, but that she has not had a violent outburst since third grade. (Tr. 26). She testified that Plaintiff has not been disciplined in school, although they moved her locker and she was beat up by neighborhood children three weeks earlier. (Tr. 27). She testified that Plaintiff has friends, but they are all two to five years younger than she is. (Tr. 27). Her mother testified that, instead of playing with age-appropriate games, she plays with Play-Doh and dolls, although she also plays computer and video games. (Tr. 28). Her mother testified that Plaintiff has a high respect for authority figures and that her friends' parents say she has no issues with listening or disrespect. (Tr. 30). She testified that Plaintiff still had anger problems "to a degree" and was bringing it "a little under control," but she still expressed anger with her tone of voice and face. (Tr. 32). She testified that Plaintiff listens to her grandparents. (Tr. 33). She testified that Plaintiff had been in the big brother, big sister program with the same big sister for six years. (Tr. 34). She testified that Plaintiff was not on any medication, but that she was on a waiting list to see a doctor for "ADD and ODD." (Tr. 23). She

testified that Plaintiff had no IEP (Tr. 31).She testified that Plaintiff has been playing percussion in the band since fifth grade and that she also enjoys music and art classes at school. (Tr. 29). She also testified that Plaintiff was interested in science and wanted microscopes and experiment kits. (Tr. 30).

## VI.    Plaintiff Allegations of Error

### A.    The ALJ's determination that Plaintiff has a less than marked impairment in interacting and relating to others

The ALJ found that Plaintiff had a less than marked impairment in interacting and relating to others. Plaintiff asserts that the ALJ supported his decision in this domain with "little discussion" and "fails to offer an explanation to support his ultimate conclusion." (Pl. Brief at 13-14). Specifically, Plaintiff asserts that the ALJ failed to address Ms. Hughes report. Plaintiff also asserts that the ALJ mischaracterized Ms. Marhefka's report when he wrote that she "noted that the claimant did not have any limitations or problems in the other domains." (Pl. Brief at 13). Plaintiff asserts that this mischaracterization requires remand because it implies that the ALJ "did not read" her assessment. (Pl. Brief at 13). Plaintiff also asserts that Ms. Marhefka's report was inconsistent with the ALJ's findings. (Pl. Brief at 13).

The Court finds that the ALJ provided sufficient discussion and explanation for his finding. Plaintiff produced testimony and reports from her mother and teachers in the record before the ALJ to support her claim that she had a marked limitation in interacting and relating to others. However, the ALJ rejected the credibility of her claims of subjective symptoms. In rejecting her credibility, the ALJ cited to the medical opinion evidence from the consultative examiner and state agency physician, which both indicated less than marked limitations in interacting or relating with others. (Tr. 54). The ALJ also noted that Plaintiff was regularly

assessed with GAFs of 55 or above. (Tr. 54). Specifically with regard to interacting and relating

with others, the ALJ explained that Plaintiff's mother testified that she has friends who are

younger than her and cited to Ms. Marhefka's report on Plaintiff's activities in the interacting

and relating with others domain.  (Tr. 57).

Marked limitations are those that "interfere[] seriously with [a claimant's] ability to

independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked

limitation must be "more than moderate" and "is the equivalent of the functioning we would

expect to find on standardized testing with scores that are at least two, but less than three,

standard deviations below the mean." Id. Limitations are determined by comparing the

functioning of a claimant in a particular domain to the functioning of children the same age

without impairments. In the domain of interacting and relating with others for Plaintiff's age

group, the regulations provide:

> School-age children (age 6 to attainment of age 12). When you enter school, you should
> be able to develop more lasting friendships with children who are your age. You should
> begin to understand how to work in groups to create projects and solve problems. You
> should have an increasing ability to understand another's point of view and to tolerate
> differences. You should be well able to talk to people of all ages, to share ideas, tell
> stories, and to speak in a manner that both familiar and unfamiliar listeners readily
> understand.

20 C.F.R. § 416.926a(i)(2)(iv).

The ALJ properly relied on Ms. Marhefka's report to find that Plaintiff did not have a

marked limitation in interacting and relating with others. Consequently, he did not

mischaracterize Ms. Marhefka's report and nothing in the record suggests that he "did not read"

her report. He cited to the limitation she identified in attending and completing tasks and

interacting and relating with others, and then noted that she indicated no other problems in the

"other domains." (Tr. 51). The ALJ is correct. Ms. Marhefka did not indicate any problems in the other four general domains. (Tr. 204). Specifically, in Ms. Marhefka's report, for the domains of acquiring and using information, moving about and manipulating objects, and caring for herself, she checked a box indicating that there were "[n]o problems observed in this domain." (Tr. 202, 205, 207). When asked to identify any physical conditions that impacted Plaintiff's functioning at school, she left the response area blank. (Tr. 208).

Moreover, aside from an obvious problem with one out of thirteen "interacting and relating with others" activities and a serious problem with two out thirteen "interacting and relating with others" activities, Ms. Marhefka reported that Plaintiff had no limitation or only a slight limitation in the other ten out of thirteen "interacting and relating with others" activities.

The ALJ also properly relied on the medical record, including Plaintiff's GAF scores and the medical opinion evidence. GAF scores of 55 indicate that, at worst, a patient is suffering moderate symptoms and/or experiencing moderate difficulty in social or school functioning:

> The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed.1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. *Id.* The score is useful in planning treatment and predicting outcomes. *Id.* The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two. …A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.*

Schwartz v. Colvin, 3:12-CV-01070, 2014 WL 257846 n. 15 (M.D. Pa. Jan. 23, 2014) (Kane, J.). Plaintiff was repeatedly assessed to have GAF scores in the 51-60 range, and was never assessed a GAF below 51 during the relevant period.

Plaintiff cited to a record from February 14, 2012, that Plaintiff had a GAF of 47. However, these records were not before the ALJ and cannot be considered by the Court outside the context of a sentence six remand. (Tr. 60-62). As discussed above, a sentence six remand requires that evidence be material, which means it gives rise to a reasonable possibility that the ALJ would have decided differently. Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Here, the records only support the ALJ's decision.  Plaintiff reported that she gets along "great" with her teachers and that things were "excellent at home." (Tr. 550). When her mother left the room for a few minutes, her grandmother reported that she had "little if any problem with her in terms of directing her behaviorally." (Tr. 551). Although the records reveal a G.A.F. of 40, she had "[n]o diagnosis" on Axis II. (Tr. 553).  She was not diagnosed with AHDH, ODD, or any other Axis I disorder. (Tr. 553). The only impression listed on Axis I was "family relational problem." (Tr. 553). Dr. George W. Sowerby, Jr., M.D. identified multiple problems with Plaintiff's mother's judgment and insight, and explained that "I think the patient is essentially a parentified child. She has been diagnosed with ADHD in the past but never treated for the same with psychopharmacologic agents." (Tr. 552). He noted that "[s]he used to have difficulty paying attention in class and sitting still in class but she says this is largely resolved." (Tr. 552). Dr. Sowerby also noted that Plaintiff's mother "adamantly and unequivocally" refused to participate in treatment that would be beneficial to Plaintiff and that another clinician made a "reasonable suggestion that [Children and Youth Services] should be

involved in this case as I have grave doubts as to the appropriateness of this patient's home situation." (Tr. 553). This evidence raises no reasonable possibility that the ALJ would have decided differently because it supports his conclusions. Thus, the Court will not remand pursuant to sentence six or consider this evidence.

The ALJ properly relied on Ms. Marhekfa's report, the medical opinion evidence, and Plaintiff's GAF scores to find that she did not have a marked limitation in interacting and relating with others. Plaintiff's assertion that the ALJ should have addressed Ms. Hughes's report is unconvincing. Ms. Hughes's report indicated less limiting problems in the domain of interacting and relating to others than Ms. Marhefka's. Moreover, the record as a whole provides substantial evidence for the ALJ's position. Plaintiff's report cards in first grade, second grade, fourth grade, and fifth grade indicated that she was "consistently meeting grade level expectations" in demonstrating a positive attitude, following directions and school rules, practicing self-control, and respecting herself, others and things. (Tr. 170, 189, 191-92, 194-95, 197). She never had problems with her teachers or friends' parents. (Tr. 30, 33). These are particularly crucial benchmarks because "[i]mportant aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others."  SSR 09-5P.

Plaintiff has been able to participate in team activities like softball and band (Tr. 29, 143, 495), went to summer camp (Tr. 222), was consistently noted to have a positive attitude on school report cards (Tr. 170, 191-92, 197), and Ms. Marhefka noted on her report card that she was a "pleasure to have in class" and "such a thoughtful, helpful student," (Tr. 188). At her March 2010 intake at NTC, she reported having trouble interacting with her mother, but her

attitude toward authority was good, she had friends, she liked school, and she liked "some" peers although she disliked others. (Tr. 395, 402, 442). Her Family Based Mental Health case at NTC was closed early because there were no concerns and her grandmother had reported that her arguments had decreased (Tr. 429, 431-32, 435). She was discharged completely shortly thereafter because she was doing "very well." (Tr. 490-91). She had a "bright" affect at her gastroenterology consult in September of 2010 (Tr. 337). At her NTC evaluation in November of 2011, she reported problems with peers and bullying, but Dr. Sowerby assessed those problems as only "moderate." (Tr. 499).

Marked problems must be "more than moderate." 20 C.F.R. § 416.926a(e)(2)(i). The only medical opinion evidence stated that Plaintiff suffered moderate limitations, at most, in interacting and relating with others. None of the objective medical evidence or school reports demonstrated more than moderate problems in interacting and relating with others. Plaintiff produced reports and testimony regarding her subjective symptoms, but the ALJ properly discounted the credibility of these reports and testimony to the extent they asserted more than moderate problems. A reasonable mind could accept this as adequate to find that Plaintiff failed to meet her burden to show that she suffered from a "more than moderate" limitation in interacting and relating with others. Substantial evidence supports the ALJ's decision in this domain.

**B.    The ALJ's determination that Plaintiff has a less than marked impairment in attending and completing tasks.**

Plaintiff asserts that the ALJ erred in finding that she had a less than marked limitation in attending and completing tasks. Plaintiff again asserts that the ALJ offered "little discussion" on how he concluded Plaintiff had a less than marked limitation in attending and completing tasks.

(Pl. Brief at 12). Plaintiff similarly asserts that the ALJ failed to address this evidence and failed to properly explain what evidence he accepted and what evidence he rejected. (Pl. Brief at 12).

As discussed above, the ALJ found that Plaintiff's subjective symptoms were not fully credible. The ALJ discounted Plaintiff's claimed limitation in attending and completing tasks because "she is actually noted to be a good third of the does not stay on task all the time." (Tr. 54)(citing Tr. 156-71). Although the Court is unsure what the ALJ meant, the Court notes that the records cited by the ALJ show that Plaintiff performed in the top third of the State of Pennsylvania on her third-grade testing. (Tr. 168). The records cited by the ALJ show that Plaintiff was "consistently meeting grade level expectations" in completing homework assignments on time, following directions, following school rules, contributing in large and small group discussions, practicing self-control, and respecting herself, others and things. (Tr. 170). The records also show that Plaintiff received a grade of "3" out of a possible 4 in each subject except math and art, which "[i]ndicates a solid understanding and adequate display of the skills." (Tr. 170-71). The ALJ also explained that, in general, Plaintiff was doing well in school. (Tr. 54)(citing Tr. 156-71, 188-208).

Implicit in the ALJ's determination that Plaintiff had a less than marked limitation in attending and completing tasks was a finding that Plaintiff did not have an extreme limitation in attending and completing tasks.  When a claimant has a less than marked limitation in five of the six domains, the limitation in the remaining domain must be extreme to qualify the claimant for benefits. Here, the ALJ properly found that Plaintiff suffered a less than marked limitation in interacting and relating with others, and Plaintiff did not challenge any of the ALJ's other findings. Thus, Plaintiff's appeal can only be granted if she can show that the ALJ lacked

substantial evidence to find that she did not have an extreme limitation in attending and completing tasks. A marked limitation in attending and completing tasks would be insufficient.

Extreme limitations "interfere[] very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). They must be "more than marked." Id. "'Extreme'" limitation is the rating [the Commissioner] gives to the worst limitations." Id. An extreme limitation is "the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id.

In the attending and completing tasks domain, the Commissioner "consider[s] how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.926a(h). The regulations provide that, for a claimant Plaintiff's age:

> School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).

Here, the ALJ cited to medical opinion evidence that Plaintiff had a less than marked limitation in attending and completing tasks, GAF scores that indicated only moderate

impairment in school functioning, and school records that showed that Plaintiff performed well in regular, mainstream classes. The ALJ properly discounted Plaintiff's credibility regarding her subjective symptoms.  Plaintiff produced no medical opinion evidence to support her claims. In a similar case, a District Court upheld the determination of an ALJ who relied on these same rationales to determine that a claimant had a less than marked limitation in attending and completing tasks:

> The question, therefore is not *whether* E's impairments interfere with his ability to focus and maintain attention, but *the degree of* that interference. A review of the evidence in the record suggests that the interference could reasonably be characterized as "moderate" rather than "marked."

> First, many of the experts who have evaluated E have determined that his impairments are only moderate. Dr. J.J. Kowalski, for example, filled out a Childhood Disability Evaluation form for E on March 16, 1999. He found that E showed "no evidence of limitation" in the areas of motor, social, and personal functioning and that E's limitation in cognitive/communicative functioning was "less than marked." (R. at 244-247). Dr. Jaime Loyola, a bilingual psychologist, evaluated E on January 26, 1999. She found that E's "high rate of retention and acquisition indicate that he is making progress in the reading area," and recommended that E should be considered a "non-exceptional student."

> Second, as the ALJ noted, E scored a 55 on the GAF test.[1] A GAF rating between 51 and 60 means *"moderate* difficulty in social, or *school* functioning [.]" *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) (emphasis added).

> Third, the record suggests that E is able to perform at a satisfactory level in the classroom. In a Teacher/Counselor Questionnaire she filled out, Martha Jimenez, E's 5th Grade teacher, stated that E receives special education in math, speech therapy, and counseling at school and that he cannot easily remember a concept the first time it is explained to him. Nevertheless, she represented that "he works at the class pace, except for some occasions when he complains [that he is] frustrated because he doesn't understand. But mostly he keeps the rest of the class pace." Ms. Jimenez also completed a Child Functioning Questionnaire in January 2003, in which she stated that "most of the time [E] finishes tasks without teacher intervention." (R. at 355).

Laracuente ex rel. E. v. Barnhart, CIV.A.04-CV-2278, 2005 WL 2002607 at *4  (E.D. Pa. Aug. 18, 2005)(emphasis in original). Thus, the Court finds that substantial evidence supports a determination that Plaintiff did not suffer an extreme limitation in attending and completing tasks. The Court declines to address whether the ALJ erred in failing to find that Plaintiff had a marked limitation in attending and completing tasks, because a marked limitation in only one domain would still require the ALJ to find that Plaintiff was not disabled.

### VII.    Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.       This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: July 29, 2014                          _____ s/Gerald B. Cohn _____
                                                            GERALD B. COHN
                                              UNITED STATES MAGISTRATE JUDGE